PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Kenneth Scott DONNELLY,
Defendant-Appellee.

No. 84SA144.

Supreme Court of Colorado,
En Banc.

Dec. 10, 1984.

Norman S. Early, Jr., Dist. Atty., Brooke Wunnicke, Chief Appellate Dist. Atty., Denver, for plaintiff-appellant.

Thomas Jirak, Grand Junction, for defendant-appellee.

ROVIRA, Justice.

Pursuant to C.A.R. 4.1, the People in this interlocutory appeal challenge an order of the district court suppressing statements and the result of the blood alcohol test of the defendant, Kenneth Scott Donnelly. We agree with the defendant that since there was no probable cause to arrest the defendant, the district court's order must be affirmed.

I.

The defendant was charged with vehicular assault, section 18–3–205, 8 C.R.S. (1973 & 1983 Supp.); assault in the first degree,

section 18–3–202(1)(c), 8 C.R.S. (1973); two counts of assault in the second degree, section 18–3–203(1)(d), 8 C.R.S. (1973); and driving under the influence, section 42–4–1202(1)(a) and (1)(c), 17 C.R.S. (1973 & 1983 Supp.). Before trial, he moved to suppress any statements made by him, and any tests used to determine his blood alcohol content, contending that no probable cause existed for his arrest.

At the suppression hearing, the People called Detective Curtis and Officer Cisneros of the Denver Police Department to testify. The record of the suppression hearing establishes that on August 13, 1983, at about 10:55 p.m., Curtis, an investigator with the Denver Police Department, responded to a radio report of a serious accident at West 48th Avenue and Lowell Boulevard in Denver. At the scene, Curtis observed the vehicles and the marks in the roadway, took pictures and measurements, and spoke with Denver police officers. One of these policemen, Officer Hunter, informed Curtis that the defendant had been driving a truck that ran a stop sign, flipped, and hit a van which was the second vehicle involved in the accident. Hunter told Curtis that a witness at the scene had volunteered information to him about the defendant and the nature of the crash. Hunter also handed Curtis the defendant's driver's license and told him that the crash had resulted in serious injury and that the defendant may have been intoxicated. In response to a question from the court as to what was the basis of Hunter's statement, Curtis testified that Hunter had spoken to a witness at the scene, and the witness identified the defendant as the driver of the truck. When asked by the trial court for the name of the witness that Hunter had talked to, Curtis identified the witness as Joe Muro.

After about half an hour at the scene, Curtis went to Denver General Hospital, where the defendant had been taken. Officer Cisneros, who was assigned to the "Driving Under the Influence" car, was already at the hospital. Curtis told Cisneros that the defendant was the driver of the truck. Cisneros then arrested the defendant for driving under the influence.

Curtis observed that the defendant smelled of alcohol, spoke with a slur, and had watery, bloodshot eyes, yet understood what was going on around him. Having been assured by both Cisneros and the defendant that the latter had been informed of his rights under *Miranda*,[1] Curtis asked the defendant what had happened. The defendant stated that both he and the other driver had yellow lights at the scene of the crash. Curtis explained to the defendant that the intersection had no traffic lights. The defendant then asked for a lawyer.

Prior to obtaining the statement from the defendant, Curtis had learned from a doctor at the hospital that the passenger in the van the truck hit had been seriously injured. Based upon his belief that the defendant was the driver of the truck that hit the van, that the defendant was under the influence, and that this would possibly be a felony filing, Curtis ordered that blood be drawn from the defendant.[2] A nurse drew defendant's blood in Cisneros' presence at about 12:15 a.m.

In ruling on defendant's motion to suppress, the trial court found:

> [No evidence was presented about] what the basis was for the witness concluding that the defendant was the driver of the vehicle involved in the accident. There is no evidence from which the court could infer that there was only one occupant of the truck involved in the accident.... [T]here is no evidence in the record upon which this court could find ... how that witness made that conclusion, or on what basis he stated to Officer Hunter that the defendant was the driver of the truck.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. No issue has been raised in this interlocutory appeal concerning the authority of the police officer to order blood withdrawn from the defendant.

Since the prosecution provided no basis for the citizen's claim that the defendant was the driver, the trial court ruled that the People had failed to establish probable cause concerning an essential element of the offense of driving under the influence of intoxicating liquor. Thus, Cisneros lacked probable cause to arrest the defendant, and the fruits of that arrest must be suppressed from use as evidence.

An arrest based on probable cause must rest on reliable information. *E.g., People v. Henry*, 631 P.2d 1122 (Colo. 1981). On many occasions we have considered whether information obtained by a police officer from someone other than another peace officer is sufficiently reliable that the data can be used to establish probable cause. We have been concerned with both the trustworthiness of the informer and the basis of the informer's knowledge. *E.g., People v. Rueda*, 649 P.2d 1106 (Colo. 1982); *People v. Henry*, 631 P.2d 1122 (Colo.1981); *People v. Nanes*, 174 Colo. 294, 483 P.2d 958 (1971). In *People v. Glaubman*, 175 Colo. 41, 485 P.2d 711 (1971), we first adopted the citizen-informer rule, holding that when the source of the information is an identified citizen-informer who has witnessed the criminal activity and is identified, that information is sufficiently reliable to support a probable cause determination. Moreover, in *People v. Edmonds*, 195 Colo. 358, 365, 578 P.2d 655, 661 (1978), we made clear that the activity observed need not be criminal in itself in order to trigger the citizen-informer rule; it is sufficient if it is one of the circumstances which, when considered together, make up the criminal activity. It is essential, however, that the citizen be an eyewitness to, or have some other first-hand knowledge of, the incident he reports to police officers. 1 W. LaFave, *Search and Seizure*, § 3.4 at 586–618 (1978); *see also People v. Lucero*, 182 Colo. 39, 511 P.2d 468 (1973).

In the present case, Curtis used the term "witness" in relating Hunter's characterization of the citizen from whom the identification of the defendant as the driver was obtained. It is ambiguous whether this term was used by Hunter to reflect that the citizen was simply present at the scene during the investigation or whether the citizen actually saw events giving him a reliable basis to conclude that the defendant was the driver of the truck. Under this state of the evidence, the trial court concluded that the basis of the citizen's information had not been established. Where, as here, the trial court's findings are supported by adequate evidence in the record, they should not be disturbed on review. *People v. Johnson*, 653 P.2d 737 (Colo.1982); *People v. Atencio*, 187 Colo. 226, 529 P.2d 636 (1974). Absent a showing that the citizen had a basis, through observation or otherwise, for the conclusion that the defendant was the driver, the trial court properly ruled that probable cause for arrest was not established and therefore correctly ordered that the fruits of the arrest must be suppressed.

Accordingly, we affirm the order of suppression and remand for further proceedings.