**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Charles Allen GREENWELL,**
**Defendant–Appellant.**

**No. 90CA0048.**

Colorado Court of Appeals,
Div. III.

March 12, 1992.

Rehearing Denied April 16, 1992.

Certiorari extension pending June
23, 1992 (92SC394).

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert Mark Russel, First Asst. Atty. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Karen A. Chaney, Seattle, Wash., for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Charles Allen Greenwell, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of contraband in the first degree in violation of § 18–8–204.1, C.R.S. (Cum. Supp.1991). We affirm.

While defendant was a prisoner in the Territorial Correctional Facility serving a 20–year sentence for the murder of a police officer, a corrections officer discovered a small marijuana (marihuana) cigarette in defendant's jacket pocket during a routine search following defendant's work shift in the prison infirmary. Arguing that, because his conviction of the murder of a police officer caused corrections personnel to dislike him and because testimony he had given against a co-conspirator caused him to be branded a "snitch by other inmates," defendant asserted that someone had placed the marihuana in his pocket without his knowledge. Alternatively, he asserted that the amount of marihuana in the cigarette was too small to constitute a usable amount; thus, he argued, he was not guilty.

## I.

### Voir Dire

Defendant initially contends that the trial court improperly restricted voir dire questions concerning his participation in the murder of the police officer. He argues that this limitation violated his right to a fair trial by impartial jurors. We disagree.

The purpose of voir dire is fulfilled so long as the examination allows a determination whether any potential jurors possess any beliefs or biases which would

prevent the defendant from receiving a fair trial. *People v. O'Neill,* 803 P.2d 164 (Colo.1990). Limitations placed on voir dire questions are within the discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. *People v. Shipman,* 747 P.2d 1 (Colo.App. 1987).

 If the voir dire process facilitates an intelligent exercise of a party's peremptory challenges and challenges for cause, the trial court may place reasonable restrictions on the questioning of jurors. *People v. Rodriguez,* 786 P.2d 472 (Colo.App.1989). Thus, a trial court may properly restrict questions as to the content of publicity regarding particular defendants and their pasts. *Mu'min v. Virginia,* — U.S. —, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).

Here, the trial court permitted counsel to inquire whether potential jurors knew of a "prior case Mr. Greenwell was involved in." Counsel also advised the jury that this prior case was a highly publicized case from Pueblo. Both attorneys asked several questions regarding defendant's theory that someone had placed the marihuana cigarette in his pocket without his knowledge. However, the court prohibited counsel from specifically mentioning the police officer's name, reasoning, in essence, that to do so would inject irrelevant issues into the trial.

When potential jurors were asked whether they recognized defendant because of this "prior case," some jurors indicated they did. These jurors were then further questioned about whether such knowledge would prevent them from rendering a fair verdict based only on the evidence in this case. Counsel for both sides elaborated repeatedly that defendant's previous crime could be used only to prove the confinement element of the current charge and for no other purpose.

In our view, this questioning was adequate to expose possible juror bias and allowed the parties to exercise their peremptory and cause challenges effectively and intelligently based on the jurors' responses. The absence of direct reference to the police officer's name did not preclude a full and complete elaboration of defendant's theory of defense.

Moreover, of the eight prospective jurors who evidenced some familiarity with the "prior case," five served on the jury; the prosecution exercised peremptory challenges as to two and defendant exercised a peremptory challenge as to one.

Since the voir dire here accomplished the dual purposes of enabling the trial court to select an impartial jury and assisting counsel in exercising peremptory challenges, *Mu'min v. Virginia, supra,* we conclude that the trial court did not abuse its discretion.

## II.

### Challenge for Cause

Defendant next contends that the trial court committed reversible error in denying his challenge for cause to a prospective juror. We disagree.

 Trial courts are afforded broad discretion in ruling on a challenge for cause to a potential juror, and a decision to deny such a challenge will be set aside only when the record discloses a clear abuse of that discretion. *People v. Sandoval,* 733 P.2d 319 (Colo.1987). In determining whether a potential juror is biased toward any party, the trial court must consider the juror's statements during voir dire as a whole. *Blades v. DaFoe,* 704 P.2d 317 (Colo.1985).

 The challenged juror here was a Colorado State Senator who had participated in enacting the statute under which defendant was charged. Defendant asserts that the Senator's knowledge of the legislative intent underlying the statute predisposed him to reject defendant's theory that he did not knowingly possess a usable amount of marihuana. Thus, defendant argues this juror was biased against him.

This juror clearly stated that he would set aside his knowledge of the legislative intent and that he would make any judgment based on "fairness and objectivity." In addition, he noted that he was unacq-

uainted with both defendant and defendant's prior crime.

This juror's responses as a whole neither show any fixed predisposition against the defendant, nor do they indicate an inability to render an impartial verdict based on the evidence presented and the instructions of the court. *See People v. Drake*, 748 P.2d 1237 (Colo.1988). Thus, the trial court properly denied defendant's challenge for cause. *Blades v. DaFoe*, *supra*.

### III.

### Defendant's Presentation of his Defense

■ Defendant contends that the trial court improperly violated his right to present a defense when it precluded testimony by an unendorsed defense witness. We perceive no error.

Defendant endorsed two fellow inmates as witnesses and obtained writs of *habeas corpus ad testificandum* securing their presence at trial. He also obtained a writ securing the presence of a third inmate, but did not notify the prosecutor.

At the conclusion of the People's case-in-chief, defendant's attorney advised the prosecutor and court of his intent to call this unendorsed witness in place of one of his endorsed inmate witnesses. The prosecutor objected, stating that prejudice would result because of lack of time properly to interview or investigate this witness.

The trial court offered to grant a mistrial, but defense counsel, in a strategic decision, objected and stated that he did not want a mistrial.

The trial court also offered to grant a continuance of the trial to afford time for investigation and interview, and defense counsel registered no objection. However, he expressed doubt whether the witness would talk to the prosecutor and noted that: "I think he is going to sit and parrot what [the other inmate witness defendant planned to call] basically says."

However, the prosecutor persisted to request exclusion of the witness' testimony. Finding that the People had had no opportunity whatsoever to prepare for this witness and also finding that it would be diffi-

cult to grant the People sufficient time and then "still keep the jury intact," the court refused to allow the witness to testify.

Applying the five-part balancing test set out in *People v. Pronovost*, 773 P.2d 555 (Colo.1989) and *People v. Hampton*, 758 P.2d 1344 (Colo.1988), we conclude that the trial court did not abuse its discretion in making this ruling.

The record contains no hint that the late endorsement was anything but inadvertent; likewise, it contains nothing to show that defendant had good reason for the delay.

On the other hand, the timing of the endorsement was prejudicial to the People. The case-in-chief had been completed and little opportunity remained for investigation, analysis, or other preparation necessary to meet this new witness' testimony.

The court considered several alternatives, and its weighing of their consequences, in our view, was eminently practical and fair. Its selection of one of these alternatives maintained the status quo of the integrity of the People's case, the focus and attention of the jury, and the pace of the trial.

Most importantly, we fail to see how the trial court's ruling prejudiced the defendant in any way. The proffered testimony was cumulative to that of another witness and could have been excluded on that basis alone notwithstanding the late endorsement. CRE 403; *see People v. Bell*, 809 P.2d 1026 (Colo.App.1990).

Accordingly, we reject defendant's contention and conclude that no abuse of discretion occurred.

### IV.

### Usable Amount

■ Defendant contends that he was entitled to a judgment of acquittal because the prosecution failed to establish that the amount of marihuana he possessed was a usable amount. Alternatively, he argues that he was entitled to a jury instruction stating that the jury must find him not guilty if it determined that the marihuana

discovered in his pocket was not a usable amount. We do not agree.

An expert in toxicology testifying for the defense defined usable amount as that amount of marihuana sufficient to produce a psychoactive effect, and he opined that the cigarette confiscated from defendant's pocket was too small to do so. The prosecution argued, however, that usable amount is only an amount sufficient to ingest. The trial court agreed with the prosecution, and so do we.

The crime charged is set out in § 18–8–204.1, C.R.S. (1991 Cum.Supp.):

A person being confined in a detention facility commits the crime of possession of contraband in the first degree if he knowingly obtains or has in his possession contraband as listed in section 18–8–203(1)(a) . . . .

The list in § 18–8–203(1)(a), C.R.S. (1986 Repl.Vol. 8B) includes marihuana or marihuana concentrate, as defined in §§ 12–22–303(17) and (18), C.R.S. (1991 Repl.Vol. 5A). None of these statutes makes any mention of usable amount.

■■■ If the language of a statute is plain and its meaning clear, it must be applied as written, *Heagney v. Schneider,* 677 P.2d 446 (Colo.App.1984), and there is no need to resort to other rules of statutory construction. *In Interest of R.C.,* 775 P.2d 27 (Colo.1989). The purpose of § 18–8–204.1 is to control contraband in penal institutions. *People v. West,* 43 Colo.App. 246, 603 P.2d 967 (1979).

Since no amount is specified in any of these statutes, we decline to supply one. Reading the plain language of the statutes and considering the clear legislative intent to control contraband in penal institutions, we conclude that any amount sufficient to ingest will support a conviction for possession of contraband in a detention facility. If we were to adopt defendant's view, we would be re-writing this legislation in a way that would defeat the clear legislative intent; in effect, we would be condoning possession of small amounts of contraband in penal institutions. This we will not do.

Defendant argues, however, that our supreme court has already held that lack of usable amount is an appropriate defense to possession and that the trial court erred in rejecting his theory. Under the facts of this case, we find no error.

In *People v. Theel,* 180 Colo. 348, 505 P.2d 964 (1973), our supreme court held that: "Where the quantity involved is so minute that it amounts to only a trace, there is no basis, from that fact alone, for any logical or reasonable inference that the defendant had knowledgeable possession." *See also People v. Stark,* 691 P.2d 334 (Colo.1984); *People v. Gomez,* 632 P.2d 586 (Colo.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *People v. Stephenson,* 187 Colo. 94, 529 P.2d 1333 (1974); *Romero v. People,* 181 Colo. 305, 509 P.2d 301 (1973).

However, none of these cases involved possession of contraband in a penal institution; thus, the public policy considerations underlying these decisions rested on different premises than those here. Moreover, the record shows that the marihuana here was rolled in cigarette paper and, as one witness testified, was in a common form for prison use.

Accordingly, we conclude that the trial court properly denied defendant's motion for judgment of acquittal. All the evidence and reasonable inferences which could be drawn therefrom, viewed in the light most favorable to the prosecution, were sufficient to support a conclusion by a reasonable mind that the defendant was guilty of the charge beyond a reasonable doubt. *See People v. Gonzales,* 666 P.2d 123 (Colo. 1983).

Additionally, the trial court properly rejected defendant's tendered instruction adding possession of a usable amount as an element which must be proved by the prosecution. *See People v. West, supra.* In all other respects, the jury was properly instructed as to the applicable law. *See People v. Freeman,* 739 P.2d 856 (Colo.App. 1987).

## V.

### Witness Impeachment

Finally, defendant contends that the trial court erred in admitting evidence that his expert witness in toxicology had been previously addicted to illegal drugs.

In light of our holding that the lack of an amount of marihuana sufficient to produce a psychoactive effect is not a defense to the charge of possession of contraband in the first degree, this expert's testimony was irrelevant. *See People v. Lowe*, 660 P.2d 1261 (Colo.1983). Accordingly, the error, if any, was harmless.

Defendant's other contentions are without merit.

The judgment is affirmed.

JONES and RULAND, JJ., concur.